UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ERIN MERTEN,**

      **Plaintiff,**

v.

**DOYLE HCM, INC.,**

      **Defendant.**

Case No. 2:24-cv-1261
Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth P. Deavers

**OPINION AND ORDER**

This matter is before the Court on Defendant Doyle HCM, Inc.'s Motion to Dismiss, or In the Alternative, Motion to Stay the Case Pending Arbitration. (Doyle Mot., ECF No. 8.) For the reasons stated in this Opinion and Order, the Court **GRANTS IN PART and DENIES IN PART** Defendant's Motion, without prejudice to refiling as to the Motion to Dismiss. This matter is **STAYED** pending arbitration. Whether Plaintiff Erin Merten's claims are arbitrable is to be decided by the arbitrator.

   **I.**   **Background**

Doyle HCM offers services in payroll, human resources, tax credits, Affordable Care Act ("ACA") compliance, and ACA penalty relief. (Am. Compl., ECF No. 7, ¶ 6.) Doyle HCM's CEO, Ryan Doyle, hired Plaintiff Erin Merten as an Operations Manager at Doyle HCM on October 15, 2018. (*Id.* ¶¶ 15, 21.) Ms. Merten alleges that she accepted a salary "much lower than the generally accepted range of salary for an HR professional" "in exchange for 10% ownership of [Doyle HCM], which would vest after 12 months of Ms. Merten's employment." (*Id.* ¶¶ 17–18.)

Ms. Merten alleges that Mr. Doyle generally disliked women in the workplace, particularly those who were aggressive or caused conflict, and preferred working with men. (*Id.* ¶¶ 32–34.)

Mr. Doyle fostered a "gender discriminatory environment," exemplified by a certain group of men known as the "Bro Club." (*Id.* ¶ 35.)

Ms. Merten alleges her ownership interest in Doyle HCM vested in October 2019. (*See id.* ¶ 36.) At that time, she began requesting documentation of her interest from Mr. Doyle, who "generally would brush off Ms. Merten's request and vaguely state he was working on [the documentation.]" (*Id.* ¶ 37.) In September 2022, Ms. Merten received draft documents regarding her ownership interest. (*Id.* ¶ 38.) When Ms. Merten negotiated the documents with Mr. Doyle, he allegedly commented that other owners, including a woman, signed the documents without hesitation and subsequently treated Ms. Merten differently due to her negotiation. (*Id.* ¶¶ 40–43.)

On February 13, 2023, Doyle HCM terminated Ms. Merten's employment. (*Id.* ¶ 44.) Mr. Doyle explained that he had investigated Ms. Merten's employment and "was astonished to learn that she had made one of her subordinate employees cry after providing constructive feedback." (*Id.* ¶ 43.)

On May 12, 2023, Ms. Merten filed a lawsuit against Doyle HCM and Mr. Doyle in the Franklin County Ohio Court of Common Pleas, claiming breach of contract, promissory estoppel, unjust enrichment, "Accounting," breach of fiduciary duty, and "Declaratory Judgment Under the Agreement as to Ownership." *Merten v. Doyle HCM, Inc.*, No. 23-cv-3413, Complaint (Franklin C.P. May 12, 2023). Doyle HCM and Mr. Doyle moved to stay the case pending arbitration, and on June 28, 2023, the Common Pleas Court granted the motion. *See Merten*, Motion to Stay (June 12, 2023), Motion Granted (June 28, 2023). According to Defendant, the parties remain engaged in arbitration proceedings pursuant to the state court order. (*See* Mot., p. 4–5.)

Ms. Merten filed a charge of discrimination with the Equal Employment Opportunity Commission on Monday, December 11, 2023. (*Id.* ¶ 50.) She received a Notice of Right to Sue

2

letter on December 26, 2023. (*Id.* ¶ 51.) She filed this lawsuit against Doyle HCM on March 19, 2024 and filed an Amended Complaint on May 8, 2024. (ECF Nos. 1, 7.) Ms. Merten brings claims for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964. (Am. Compl., ¶¶ 79–91.)

Doyle HCM filed a Motion to Dismiss, or in the alternative, Motion to Stay the Case Pending Arbitration. (Doyle Mot.). Plaintiff filed a response in opposition to the motion. (Resp., ECF No. 16), and Doyle HCM replied (Reply, ECF No. 18). Doyle HCM attached to its Motion an Employment Agreement signed by Ms. Merten and Mr. Doyle on October 15, 2018. (Agreement, ECF No. 8-1.) The Agreement includes the following arbitration provision, in relevant part:

> **Arbitration**. Parties agree that any dispute or claim arising out of or relating to this Agreement, breach thereof, or the relationship of the Parties or termination thereof, will be settled by binding arbitration in Franklin County, Ohio in accordance with the applicable state and federal laws of Ohio. Parties agree that arbitration proceedings will follow the process outlined by the Ohio Revised Code Chapter 2711. Questions or challenges to the arbitrability of this Agreement or any claims hereunder or arising out of the relationship of the Parties or termination thereof, will be decided exclusively by the arbitrator in accordance will be decided exclusively in accordance with Chapter 2711.

(Agreement, PageID 106.)

## II. The Parties' Arbitration Arguments

The Parties do not dispute that they entered into a binding employment Agreement. (Agreement; Doyle Mot., p. 2–3; Resp., PageID 154–55.) They also agree that the Agreement includes the arbitration provision as recited above and that the Court should consider it at this stage in the case. (Doyle Mot., p. 2; Resp., PageID 155 n. 6.)

Doyle HCM argues that the Court can and should first decide its Motion to Dismiss Ms. Merten's claims even though it argues that the arbitration provision applies to the merits and to

3

arbitrability. (Doyle Mot., p. 5, 21–22.) In the alternative, Doyle HCM argues that the Court should stay the case pending arbitration. (*Id.*) If the arbitration provision applies, however, this Court should not decide the Motion to Dismiss. *See Council of Smaller Enters. v. Gates, McDonald & Co.*, 687 N.E.2d 1352, 1356 (Ohio 1998) ("'[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.'" (quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986))). Therefore, the Court construes Doyle HCM's Motion as one to stay pending arbitration, or in the alternative, to dismiss.

Ms. Merten argues that her federal claims in this lawsuit "fall outside of the arbitration provision because they do not arise under the [Agreement] and do not have a significant relationship with that Agreement." (Resp., PageID 146.) She opposes the Motion to Stay Pending Arbitration and the Motion to Dismiss. (*Id.*) Additionally, Doyle HCM argues federal law governs the arbitration proceedings and that under the express terms of the Agreement, the arbitrator, rather than the Court, should determine the arbitrability of Ms. Merten's claims. (Reply, PageID 205–06.) Ms. Merten argues that Ohio law governs arbitration under the Agreement and that the Court, rather than the arbitrator, should determine arbitrability. (Resp., PageID 157.)

Since the arbitration issue is a threshold matter, the Court first addresses whether federal or state arbitration law governs in this case. Based on that determination, and the express terms of the Agreement, the Court determines whether the Court or the arbitrator should decide the arbitrability of Ms. Merten's claims.

**III.     Governing Arbitration Law**

"Although the [Federal Arbitration Act ("FAA")] generally preempts inconsistent state laws and governs all aspects of arbitrations concerning 'transaction[s] involving commerce,'

4

parties may agree to abide by state rules of arbitration, and 'enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA.'" *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 748 F.3d 708, 715–16 (6th Cir. 2014) (quoting *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x. 517, 522–23 (6th Cir. 2012)). "The central inquiry in this choice-of-law determination is whether the parties unambiguously intended to displace the FAA with state rules of arbitration." *Id.* at 716.

Here, the Parties unambiguously intended for Ohio law to govern the arbitration proceedings. The arbitration provision in the Agreement states that arbitration will take place "in accordance with the applicable state and federal laws of Ohio" and "will follow the process outlined by the Ohio Revised Code Chapter 2711." (Agreement, PageID 106.) Accordingly, the Court applies Ohio law regarding the arbitrability of this dispute.

### IV. Determination of Arbitrability

The Ohio Supreme Court ascribes four principles that govern determinations of arbitrability. *Acad. of Med. of Cincinnati v. Aetna Health, Inc.*, 842 N.E.2d 488, 491 (Ohio 2006) (citing *Council of Smaller Enters.*, 687 N.E.2d 1352).

> The first principle is that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' . . . This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration." *AT&T Technologies, Inc.*, 475 U.S. at 648–49 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).
>
> The second principle is that "the question of arbitrability—whether a[n] . . . agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.*, 475 U.S. at 649.
>
> The third rule is, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the

5

> underlying claims." *Id.*, 475 U.S. at 649.
>
> The fourth principle is that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.*, 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 582–88).

*Council of Smaller Enters.*, 687 N.E.2d at 1355–56 (cleaned up).

Thus, in deciding whether the Court or the arbitrator should determine the arbitrability of Ms. Merten's Title VII claims, the driving question is whether the Parties "clearly and unmistakably" provided for the arbitrator to determine arbitrability. *Id.* at 1356.

Ms. Merten argues that an apparent typographical error in the arbitration provision complicates the matter. As recited above, the Agreement provides that "[q]uestions or challenges to the arbitrability of this Agreement or any claims hereunder or arising out of the relationship of the Parties or termination thereof, will be decided exclusively by the arbitrator in accordance will be decided exclusively in accordance with Chapter 2711." (Agreement, PageID 106.) In Ms. Merten's view, the Parties intended to strike the "by the arbitrator" portion and intended for arbitrability to be governed "exclusively in accordance with [Ohio Revised Code] Chapter 2711." (Resp., PageID 155.) In Doyle HCM's view, the Agreement unambiguously demonstrates the Parties' intent for the arbitrator to determine arbitrability. (Reply, PageID 205–06.)

The Court agrees with Doyle HCM. The typographical error in question is the second instance of the words "will be decided exclusively." This error does not create an ambiguity regarding the substantive parts of the provision: the Parties intended for the arbitrator exclusively to determine arbitrability of Ms. Merten's claims in accordance with Ohio Revised Code Chapter 2711. The error does not create ambiguity through competing or contradictory terms. Rather, the requirement for the arbitrator to determine arbitrability and for them to do so in accordance with

6

Ohio law operate in harmony. As explained above, Ohio law permits an arbitrator to determine arbitrability when the Parties clearly and unmistakable provide for the arbitrator to do so. *Council of Smaller Enters.*, 687 N.E.2d at 1356. In accordance with the clear and unambiguous terms of the Parties' Agreement, this case will be stayed pending an arbitrator's determination of the arbitrability of Ms. Merten's Title VII claims.

Furthermore, under Ohio law, the Court "is not to rule on the potential merits of the underlying claims." *Council of Smaller Enters.*, 687 N.E.2d at 1356 (quotation and citation omitted). A ruling on Doyle HCM's Motion to Dismiss would be a ruling on the "potential merits" of Ms. Merten's claim. Accordingly, the Court will not decide Doyle HCM's Motion to Dismiss Ms. Merten's claims while the case is stayed pending arbitration.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** Doyle HCM's Motion to Dismiss, Or In the Alternative, Motion to Stay the Case Pending Arbitration. (ECF No. 8.) The case is **STAYED** pending the outcome of arbitration. Doyle HCM's Motion to Dismiss is **DENIED** without prejudice to refiling. Doyle HCM may refile the Motion to Dismiss if this matter is returned to the Court after a determination of arbitrability from the arbitrator.

This case remains open.

**IT IS SO ORDERED.**

**3/19/2025**             s/Edmund A. Sargus, Jr.
**DATE**                        **EDMUND A. SARGUS, JR.**
                                   **UNITED STATES DISTRICT JUDGE**